IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

In re:                                )
                                      )   Case No. 3:16-bk-08624
WERTHAN PACKAGING, INC.,              )
                                      )   Chapter 11
        Debtor.                       )
                                      )   Judge Harrison
                                      )
                                      )

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO BANKRUPTCY
CODE SECTION 364, (2) GRANTING SENIOR LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING USE OF CASH
COLLATERAL AND PROVIDING ADEQUATE PROTECTION, (4) MODIFYING
THE AUTOMATIC STAY, (5) SETTING EXPEDITED INTERIM HEARING,
AND (6) PRESCRIBING FORM AND MANNER OF NOTICE AND TIME
FOR FINAL HEARING**

Werthan Packaging, Inc. ("Werthan" or "Debtor"), as debtor-in-possession, by and

through its undersigned counsel, respectfully requests the Court to enter an interim order

substantially in the form attached hereto as Exhibit A (the "Interim Order"): (i) authorizing the

Debtor to obtain postpetition financing pursuant to 11 U.S.C. § 364; (ii) granting senior liens and

superpriority administrative expense status; (iii) authorizing the Debtor's use of "cash collateral"

(as defined in 11 U.S.C. §363(a), "Cash Collateral") and providing adequate protection; (iv)

modifying the automatic stay; and, (v) prescribing the form and manner of notice and time for

final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of

a Final Order (as defined herein), and approving the form of notice with respect to the Final

Hearing. In support of this motion (the "Motion"), the Debtor relies upon the *Declaration of*

*Gary M. Murphey, Chief Restructuring Office of Werthan Packaging, Inc., in Support of Various*

*First Day Relief* (the "Murphey Declaration") filed contemporaneously herewith and incorporated by reference and respectfully states:

## LOCAL RULE 2081-1(F) STATEMENT

**The requested relief herein seeks:**

> **(1)    Findings, conclusions or holdings as to the amount of debt and its validity and perfection subject to the rights of certain parties to challenge such findings, conclusions or holdings.  *See pp. 6-10 of the Motion, and pp. 3-4 and 6-12 of the Proposed Interim Order.***

> **(2)    The use of funds derived from postpetition financing to pay all or part of the Veritas Prepetition Indebtedness as part of the Post-Petition DIP Financing as a continuation of the Veritas revolver loan.  *See pp. 8-9 of the Motion, and pp. 3-6 and 9-10 of the Interim Proposed Order.***

> **(3)    A carve-out for Case Professional Fees with a restructure and limited on the use of the same for investigation and pursuit of cause of action against the PrePetition Lenders. *See pp.6-7 and 10-11 of the Motion, and pp. 4 and 6-9 of the Proposed Interim Order.***

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 506(a), 507(a)(8), 541 and 1129.  Such relief is warranted pursuant to Bankruptcy Rule 6003.

## BACKGROUND

3.    On December 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is authorized to continue to operate its business and manage its properties as debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 Case.

4.     Werthan, based in White House, TN, is a leading supplier of multiwall paper packaging for the pet food industry. This sixth generation company has been an important part of the fabric of Nashville business since the late 1860s. At its height the company employed over 1,200 people at its long-standing home in North Nashville.

5.     In 2010 the company began its move to a modern 184,000 sq. ft. facility in White House, Tennessee. During 2016, the company installed a new 10-color flexographic press, and was awarded the Safe Quality Food (SQF) certification. With these initiatives accomplished, the nearly 100 associates of the upgraded company expected to grow its paper packaging business, as well as introduce plastic packaging and packaging for human food into its product mix.

6.     Unfortunately, Werthan's business did not expand as quickly as hoped, and on September 20, 2016, the Debtor engaged Gary Murphey and his company, Resurgence Financial Services, LLC ("RFS"), as Chief Restructuring Officer of the Debtor (the "CRO") to assist with possible financing sources and possibly run a sale process for the Debtor's assets. In early November 2016, Werthan communicated with Gateway Packaging Company, LLC ("Gateway") about a potential sale of Werthan's assets. Gateway operates in the same general business as Werthan, so Werthan believed Gateway to be a natural selection of an entity potentially interested in purchasing Werthan's assets. Shortly thereafter, Gateway and Werthan negotiated and executed a letter of intent that ultimately led to Gateway's agreement to purchase substantially all of Werthan's assets pursuant to the terms of the APA, to be accomplished in a Chapter 11 case (the "Sale").

7.     The Debtor expects that the proceeds from the Sale will enable the Debtor to repay its secured creditors in full, pay all of the administrative expenses of the bankruptcy estate, and make a distribution to unsecured creditors. Additionally, if Gateway is the successful bidder, Werthan believes that Gateway may retain certain of Werthan's employees.

## PREPETITION SECURED LOANS

8.     On October 14, 2015, the Debtor entered into a Loan and Security Agreement between VPF Asset Funding, LLC ("Veritas") and the Debtor (the "Veritas Credit Agreement"), pursuant to the terms of which the Debtor obtained an asset-based revolving line of credit (the "Veritas Loan") from Veritas in a maximum amount not to exceed the lesser of (a) $3,500,000 and (b) a borrowing base equal to the sum of (1) 85% of eligible accounts receivable and (2) 55% of eligible inventory, subject to various exclusions and reserves established by Veritas. The Veritas Loan matures on October 14, 2018 and is secured by substantially all of the personal property of the Debtor and a pledge of substantially all of the equity of the Debtor (the "Veritas Collateral"). The original Veritas Collateral also included cash held in one or more blocked deposit accounts in the amount of $750,000.00. That cash was taken by Veritas prepetition and applied to its debt and the Veritas Credit Agreement has been amended by the Third Amendment to Loan and Security Agreement dated as of December 1, 2016 to account for the reduced availability caused by the payment.

9.     On October 14, 2015, the Debtor obtained a term loan from Newtek Small Business Funding, LLC ("Newtek," and along with Veritas, the "Prepetition Lenders") in the principal amount of $4,650,000 (the "Newtek Loan") pursuant to a promissory note made and executed by the Debtor and payable to the order of Newtek (the "Newtek Credit Agreement," and together with the Veritas Credit Agreement, sometimes collectively referred to as the "Credit

Agreement"). The Newtek Loan matures on October 14, 2025 and is secured by all of the Debtor's machinery and equipment (the "Newtek Collateral," and together with the Veritas Collateral, sometimes collectively referred to as the "Prepetition Collateral"). The Newtek Loan was made primarily to purchase the 10-color Flexographic Press and to provide the Debtor additional working capital.

10. On October 14, 2015, Veritas and Newtek entered into an Intercreditor Agreement whereby (a) Veritas subordinated its lien on the Newtek Collateral to Newtek and (b) Newtek subordinated any interest it may have in any assets of the Debtor other than the Newtek Collateral to Veritas. Pursuant to this agreement, each of Newtek and Veritas agreed that it will not exercise rights or remedies against the other party's priority collateral while the other party's indebtedness to the Debtor is outstanding. Newtek additionally agreed to give Veritas thirty (30) days to cure any default under the Newtek Loan before pursuing any rights or remedies against the Newtek priority collateral.

## RELIEF REQUESTED

11. The Debtor needs to continue its business operations to maintain the value of its business, and use of the Debtor's accounts receivable is critical to the ongoing operation of the Debtor's business and this Chapter 11 Case. The Debtor seeks authority to obtain postpetition financing under section 364 of the Bankruptcy Code from Veritas under substantially the same terms as the Veritas Credit Agreement, as described in the Interim Order, including authority to use Cash Collateral.

12. The Debtor is presently unable to obtain unsecured credit (allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense) pursuant to Section 364(a) and (b) of the Bankruptcy Code in an amount necessary for the maintenance and

preservation of the Debtor's estate.  The Debtor has not been able to obtain financing on terms

and conditions more favorable to the estate than those offered by Veritas under the Interim Order.

13.     Specifically, the Debtor requests entry of interim and final orders authorizing the

Debtor to:

> a.     obtain postpetition financing as described more particularly in the Interim Order;
>
> b.     use Cash Collateral in the Specified Period in the amounts and for the purposes set forth in the Budget attached as Exhibit 1 to the Interim Order, subject to the terms of the Interim Order;
>
> c.     grant the Veritas and Newtek the Senior Adequate Protection Liens and the Senior Adequate Protection Superpriority Claim to the extent of any diminution in value of their respective interests in the PrePetition Collateral, and for the imposition of the automatic stay;
>
> d.     vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;
>
> e.     schedule a final hearing (the "Final Hearing") on or before December 30, 2016 to consider entry of an order (the "Final Order" attached as Exhibit B) granting the relief requested herein on a final basis and approve the form and notice with respect to the Final Hearing;
>
> f.     waive any applicable stay and provide for immediate effectiveness of the Interim Order; and,
>
> g.     provide a "carve-out" for professional fees, as more specifically set forth below.

14.     The Debtor requests that the duration of the Interim Order be five (5) weeks,

through the end of the week beginning January 6, 2017.

15.     The Interim Order reaffirms the terms of the Veritas Credit Agreement for the

Debtor, allowing the Debtor to access the full amount of the Veritas Credit Agreement to assist

the Debtor's ongoing operations.  The key terms of the Veritas Credit Agreement, as amended,

are described above.

16.     The best interests of the Debtor's estate are served by the Court authorizing the Debtor to borrow funds from the Veritas and to provide the Prepetition Lenders with liens and security interests, subject to the terms of the Interim Order.  Pursuant to the Interim Order, the Prepetition Lenders are not obtaining a "priming" lien upon any property encumbered by a properly perfected, valid, prepetition lien or security interest existing as of the Petition Date other than liens securing the Prepetition Obligations.

17.     The Debtor requests entry of the Interim Order as soon as possible.  Because of the high debt and losses in the Debtor's business (as detailed in the Murphey Declaration) and because of the Gateway's concern over the erosion of the Debtor's business, the APA requires that the sale be approved within thirty (30) days after the Petition Date.  The Debtor will be unable to operate in Chapter 11 and consummate the Sale unless the Court enters the Interim Order promptly to provide interim debtor in possession financing and use of Cash Collateral.  If the Sale cannot be consummated within the APA's required time frame, there is little chance that the Debtor's business would survive, to the detriment of the Debtor's employees, vendors, customers, and creditors.  Thus expedited approval of the Interim Order is in the best interests of the Debtor and its estate.

18.     The Interim Order grants the Prepetition Lenders super priority claims pursuant to 11 U.S.C. § 364(c)(1), a senior lien on unencumbered property pursuant to 11 U.S.C. § 364(c)(2), a junior lien on certain encumbered property pursuant to 11 U.S.C. § 364(c)(3), and a first priority, priming lien upon all of the Debtor's property that is subject to liens securing the Prepetition Obligations (collectively, the "Postpetition Liens").  The Postpetition Liens are subject to a "carveout," which becomes effective on a default by the Debtor on the Interim Order, to enable the Debtor to pay U.S. Trustee fees, to pay professional fees of the Debtor, and to pay

professional fees of a creditors' committee.

19.     The Debtor requires postpetition financing and the use of Cash Collateral to pay certain expenses as reflected in the Budget. Collections on accounts receivables are the Debtor's only source of funds with which to pay expenses and are subject to the liens of the Prepetition Lenders as described above.  Therefore, the Debtor's ability to re-borrow under the terms of the Veritas Credit Agreement and use Cash Collateral to pay budgeted expenses is essential to the success of the Sale and of this Chapter 11 Case.  Unless the Court authorizes the use of Cash Collateral, the Debtor will be unable to pay for goods and services and pay expenses necessary to preserve and maximize the value of its assets.  Thus, authorization of postpetition financing and to  use Cash Collateral, pending the Final Hearing, is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest.

20.     As it became apparent to the Debtor that it would need to file for protection under the Bankruptcy Code, the Debtor entered into negotiations with Veritas for postpetition financing by continued use of the Veritas Credit Agreement, and, while Veritas has consented to the relief requested herein, Newtek has not (as of the Petition Date.  The Debtor also entered into negotiations with Veritas and Newtek regarding an agreement on the use of Cash Collateral. Those negotiations resulted in the form of the Interim Order and Final Order submitted with this Motion.

## BASIS FOR RELIEF REQUESTED

21.     Section 364(c) of the Bankruptcy Code provides that if a debtor in possession is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor in possession to obtain credit or incur debt:

Case 3:16-bk-08624   Doc 3   Filed 12/05/16   Entered 12/05/16 00:26:18   Desc Main
                    Document       Page 8 of 47

<ol>
<li>(1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of [the Bankruptcy Code]; or</li>

<li>(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or</li>

<li>(3) secured by a junior lien on property of the estate that is subject to a lien.</li>
</ol>

11 U.S.C. § 364(c). Pursuant to section 364(d) of the Bankruptcy Code, a debtor in possession may also grant liens and security interest in all or a part of its assets that are prior and superior to all other liens or security interest therein. The postpetition liens being grated to Veritas are described below regarding Cash Collateral.

22. The terms and conditions set forth herein, and in the Veritas Credit Agreement were negotiated by the Debtor and the Prepetition Lenders at arms' length, are for reasonably equivalent value, and are fair and reasonable under the circumstances. Accordingly, The Court should find that Veritas is entitled to the benefit of § 364(e) of the Bankruptcy Code, such that if any of the provisions of the Interim Order, or the Final Order, are later modified, vacated, stayed or terminated by subsequent order of this Court or any other court, the Prepetition Lenders shall be fully protected with respect to any amounts previously disbursed.

23. The terms of the Veritas Credit Agreement and the Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis, on the terms set forth in the Veritas Credit Agreement and the Interim Order, in order to maximize the value of the estate, and to prevent irreparable harm to the Debtor prior to the Final Hearing.

24. Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral

consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

25.     Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  While the concept of adequate protection is not defined in the Bankruptcy Code, section 361 sets forth a non-exclusive list of examples as to how adequate protection may be provided, including cash payments and replacement liens.  The purpose of adequate protection is to preserve the creditors' position and to protect the secured creditor from diminution of the value of its collateral during the bankruptcy process. *In re Worldcom, Inc*., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); *In re Ledgmere Land Corp*., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

26.     The Interim Order provides for the Prepetition Lenders to be granted replacement liens and superpriority administrative expense claims under Sections 503 and 507 of the Bankruptcy Code.  These protections are adequate and necessary to protect the Prepetition Lenders from any diminution in the value of their respective interests in the Cash Collateral as a result of the use of the Cash Collateral, the Carve Out, or the imposition of the automatic stay.

27.     Furthermore, as reflected in the Budget submitted with this Motion, the Debtor needs the liquidity from the use of the Cash Collateral in order to conduct its post-petition operations in a manner that would maximize the value of its business and its assets.  Without the use of Cash Collateral, the Debtor would not be able to fund this Chapter 11 Case, consummate the Sale, and provide a distribution to the creditors.

28.     The Debtor believes that the terms of the use of cash collateral are fair and reasonable, as they provide the Prepetition Lenders with additional post-petition liens, while permitting the Debtor to consummate the Sale, within certain restrictions, thereby providing the Debtor with the reasonable opportunity to provide a distribution to creditors.

29.     The Interim Order (and proposed Final Order) provide for $300,000 carve-out for estate professionals of the Prepetition Lenders' Prepetition Collateral upon a default occurring. Prior to any such default, the Debtor may pay estate professionals (subject to all required Court approvals) to the extent provided for in the Budget.

30.     Accordingly, the Court should approve the Debtor's use of the Cash Collateral pursuant to the terms set forth in the Interim Order.

## INTERIM RELIEF

31.     Federal Rule of Bankruptcy Procedure 4001 provides that a final hearing on a motion for authorization to obtain postpetition financing and for authorization to use Cash Collateral may not be commenced earlier than 14 days after service of the motion. If the motion so requests, however, the court may conduct a preliminary hearing before such 14 day period expires and may authorize the use of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See* FED.R.BANK.P. 4001(b)(2,3).

32.     The urgent need to preserve the Debtor's businesses and avoid immediate and irreparable harm to the estates, as set forth in this Motion, makes it imperative that the Debtor be authorized to obtain postpetition financing and use Cash Collateral pursuant to the terms set forth in the Interim Order and summarized in this Motion, pending the Final Hearing. It is critical that the Debtor maintains the confidence of employees, suppliers, and customers in the Debtor's ability to meet their obligations while preparing for the Sale. Continued cash availability is

essential to the Debtor's ability to achieve this important aim. The denial of use of Cash Collateral for these purposes would result in the immediate shut-down of the Debtor's operations, irreparably damaging the Debtor's ability to consummate the Sale and causing substantial prejudice to the Debtor's estate, its creditors, and other parties-in-interest.

33. Accordingly, this Court should enter an order authorizing the Debtor's use of Cash Collateral pursuant to the terms set forth in the proposed Interim Order pending a Final Hearing and should schedule a final hearing pursuant to Bankruptcy Rule 4001.

## NOTICE WITH RESPECT TO INTERIM HEARING

34. No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case. The Debtor has provided notice of this motion via email, fax, hand delivery or overnight mail to: (a) Gateway Packaging Company, LLC, c/o McDonald Hopkins, Attention David Agay (b) the Office of the United States Trustee for the Middle District of Tennessee; (c) the Internal Revenue Service; (d) the Tennessee Department of Revenue; (e) the Pension Benefit Guaranty Corporation; (f) all secured creditors; (g) the twenty-five largest unsecured creditors; (h) all known utility providers; (i) the U.S. Environmental Protection Agency; (j) the Tennessee Department of Environment and Conservation; (k) the Metropolitan Government of Nashville (l) the City of White House, Tennessee; (m) Robertson County, Tennessee; (n) Sumner County, Tennessee; (o) lessors of real and personal property; and (p) known counterparties to contracts that may be assumed. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NOTICE WITH RESPECT TO FINAL HEARING

35. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that the Court authorize it to provide notice of the Final Hearing by serving a notice of the Interim Order and

the proposed Final Order via email, fax, hand delivery or overnight mail upon: (a) Gateway Packaging Company, LLC, c/o McDonald Hopkins, Attention David Agay (b) the Office of the United States Trustee for the Middle District of Tennessee; (c) the Internal Revenue Service; (d) the Tennessee Department of Revenue; (e) the Pension Benefit Guaranty Corporation; (f) all secured creditors; (g) the twenty-five largest unsecured creditors; (h) all known utility providers; (i) the U.S. Environmental Protection Agency; (j) the Tennessee Department of Environment and Conservation; (k) the Metropolitan Government of Nashville (l) the City of White House, Tennessee; (m) Robertson County, Tennessee; (n) Sumner County, Tennessee; (o) lessors of real and personal property; (p) known counterparties to contracts that may be assumed; and (q) all other parties that filed a notice of appearance and demand for service of papers in the Debtor's bankruptcy case under Bankruptcy Rule 9010(b).

36. The cost of mailing notice to all creditors in this Chapter 11 Case would be extremely expensive, and would not, in the Debtor's view, confer any substantial benefit on the Debtor, its estate, its creditors, or other parties-in-interest. Accordingly, and in light of the relief requested, the Debtor respectfully requests that any further notice of the Hearing and of the relief requested, other than as provided for in the Motion, be dispensed with and waived.

<div align="center">

### NO PRIOR REQUEST

</div>

No prior request for the relief sought herein has been made to this or any other court.

## <u>CONCLUSION</u>

Wherefore, the debtor respectfully requests that this court enter the Interim Order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested and setting a hearing on the Final Order and for such other and further relief as it deems just and proper.

<u>/s/ Paul G. Jennings</u>
BASS, BERRY & SIMS PLC
Paul G. Jennings
Gene L. Humphreys
150 Third Avenue South, Suite 2800
Nashville, TN  37201
Tel:  (615) 742-6200
Fax:  (615) 742-6293
pjennings@bassberry.com
ghumphreys@bassberry.com
*Proposed Counsel for Debtor*

# **EXHIBIT A**
# **Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:16-bk-08624 |
| WERTHAN PACKAGING, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | Judge Harrison |
| | ) | |

**INTERIM ORDER
(1) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING
PURSUANT TO BANKRUPTCY CODE SECTION 364, (2) GRANTING SENIOR
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (3)
AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDING
ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY, (5)
SETTING EXPEDITED INTERIM HEARING, AND (6) PRESCRIBING FORM
AND MANNER OF NOTICE AND TIME FOR FINAL HEARING**

Upon the Motion (DN ___, the "Motion")[1] of the Debtor seeking entry of an interim

order to authorize the Debtor to obtain postpetition financing, granting senior liens and

superpriority administrative expense status, authorizing the use of cash collateral and providing

adequate protection, modifying the automatic stay, setting an expedited interim hearing, and

prescribing form and manner of notice for final hearing, and it appearing that venue of this

Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and upon consideration of the Murphey Declaration; and it appearing that this Court has

jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that notice of

the Motion has been given as set forth in the Motion and that such notice is adequate and no

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that there is a critical need for the use of cash collateral of the Prepetition Lenders; and after due deliberation and consideration, and the good and sufficient cause appearing therefor, the Court makes the following findings of Fact and Conclusions of law:

A.      _Petition Date_:  On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court") commencing this Chapter 11 Case.

B.      _Debtor in Possession_:  The Debtor is continuing in the management and operation of it business and properties as debtor in possession pursuant to sections 1107 and 1008 of the Bankruptcy code.  No trustee or examiner has been appointed in this Chapter 11 Case.

C.      _Jurisdiction and Venue_:  This court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this Chapter 11 Case, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _No Trustee, Statutory Committee_.  As of the date hereof, the United States Trustee for the Middle District of Tennessee has not yet appointed an official committee of unsecured creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").  No trustee or examiner has been appointed in this Chapter 11 Case.

E.    *Debtor's Stipulations*.  After consultation with its counsel, and without prejudice to the rights of parties in interest as set forth in paragraph 11 herein, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, paragraph E(i) through E(iv) below are referred to herein as the "Debtor's Stipulations"):

(i)    *Prepetition Secured Facilities*.  On or about October 14, 2015: (a) the Debtor and Veritas entered into the Veritas Credit Agreement; (b) the Debtor and Newtek entered into the Newtek Credit Agreement; and (c) Veritas and Newtek entered into an Intercreditor Agreement whereby Veritas subordinated its lien on the Newtek Collateral to Newtek and Newtek subordinated any interest it may have in any assets of the Debtor other than the Newtek Collateral to Veritas (the "Intercreditor Agreement").

(ii)    *Prepetition Liens and Collateral*.  The Credit Agreement is secured by the Prepetition Collateral, including without limitation accounts receivable.

(iii)    *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations*.  The Debtor acknowledges and agrees that:  (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral; (c) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens exist, and no portion of the Prepetition Liens is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Debtor and its estate has no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the

Bankruptcy Code, against the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Credit Agreement.

(iv) *Cash Collateral*. The Debtor represents that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other prepetition collateral, constitutes the Cash Collateral of the Prepetition Lenders.

F. *Adequate Protection*: The Prepetition Lenders are entitled to receive adequate protection to the extent of any diminution in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the subordination of the Prepetition Liens to the Carve-out, as described herein, and the imposition of the automatic stay (collectively the "<u>Diminution in Value</u>") pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, and 507(b), as adequate protection against any Diminution in Value, the Prepetition Lenders will receive: (a) the Adequate Protection Liens, and (b) the Adequate Protection Superpriority Claims (as each as defined herein).

G. *Sections 506(c) and 552(b)*. Upon entry of this Interim Order, in light of the Prepetition Lenders' agreement to subordinate their Adequate Protection Liens and Adequate Protection Superpriority Claims to the Carve-out and to permit the use of their Cash Collateral for payments made in accordance with the terms of this Interim Order, the Prepetition Lenders are entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H.    *Necessity of Relief Requested*.  The Debtor requires postpetition financing and the use of Cash Collateral to continue to operate it business in the ordinary course.  Without authorization for the postpetition financing and the continued use of cash Collateral, the Debtor would not be able to consummate the Sale and maximize the value of its assets, and serious and irreparable harm would result to the Debtor, its estate, and estate, and its creditors.  The relief requested in the Motion is therefore necessary, essential, and appropriate to prevent immediate and irreparable harm to the Debtor's estate and to allow the maximization of the Debtor's assets, including the Prepetition Collateral, and, accordingly, good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).

I.    *Good Faith*.  The Prepetition Lenders and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund the Debtor's operations during the Specified Interim Period (as defined herein).  Entry of this Interim Order is in the best interests of the Debtor and its estate.

J.    *Consent to Debtor's Use of Cash Collateral*.  The Debtor has requested that the Prepetition Lenders consent to the Debtor's use of Cash Collateral, and the Prepetition Lenders have consented to the Debtor's use of Cash Collateral, subject to the terms and conditions of this Interim Order.

K.    *Continuation of Veritas Revolver Credit Post-Petition*.  Veritas has agreed to continue to provide credit to the Debtor pursuant to Section 364 on the same terms as provided for in the Veritas Credit Agreement, as amended by the Third Amendment to Loan and Security Agreement dated as of December 1, 2016 and on the terms set forth in this Interim Order.

BASED upon the Motion and the foregoing stipulations and findings, the COURT hereby ORDERS as follows:

1.      The Motion is granted to the extent provided herein.

2.      All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.      The Debtor is hereby authorized to borrow money, incur indebtedness and perform its obligations hereunder and under the Veritas Credit Agreement. Except as provided herein, the Veritas Credit Agreement shall constitute a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.

4.      Subject to the terms and conditions of this Interim Order, the Debtor shall be entitled to use Cash Collateral from and after the Petition Date through the date that is forty-five (45) days after the Petition Date (the "Specified Interim Period") in accordance with the budget approved by the Prepetition Lenders and attached hereto as Exhibit 1 (the "Budget").

5.       As adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral for any diminution in value caused by the use of Cash Collateral, the subordination of the Prepetition Liens and the Adequate Protection Liens (as defined herein) to the Carve-Out (as defined herein) or the imposition of the automatic stay, the Prepetition Lenders are hereby granted valid, continuing, and automatically perfected first priority security interests and replacement liens (the "Adequate Protection Liens") in and upon all of the Debtor's properties and assets, real or personal, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof, and all accessions thereto, substitutions and replacements therefore, and wherever located, and all assets acquired by the Debtor's estate on or after the Petition Date (collectively, the "Postpetition Collateral", and together with the Prepetition Collateral, the "Collateral"). The Prepetition Lenders' respective interests in the Collateral (whether Prepetition

Collateral or Postpetition Collateral) continue to be subject to the Intercreditor Agreement. The Adequate Protection Liens shall include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof but shall not include other causes of action under chapter 5 of the Bankruptcy Code and shall be subject only to (a) the Carve Out; (b) existing valid, enforceable, non-avoidable liens that were, as a matter of law, senior to the liens of the Prepetition Lenders as of the Petition Date; and (c) the quarterly fees payable to the United States Trustee and Clerk of the Court pursuant to 28 U.S.C. § 1930 and shall otherwise be senior to all other liens, claims, or interests in or to the Collateral.

6.      The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Case"); provided that except as expressly set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Chapter 11 Case or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed or elected in this Chapter 11 Case or any Successor Case, or upon the dismissal of this Chapter 11 Case or any Successor Case; and provided further that the Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code, nor shall any lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code be made *pari passu* with or senior to the Adequate Protection Liens.

7.     As additional adequate protection, the Prepetition Lenders are hereby granted as and to the extent provided in section 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in this Chapter 11 and any successor case (collectively, the "Superpriority Claims"), which shall be junior only to the Carve Out.  Except for the Carve Out, the Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

8.     The security interests and liens granted to the Prepetition Lenders pursuant this Interim Order shall not be subordinated to or made *pari passu* with any other lien, security interest or administrative claim under Section 364 of the Bankruptcy Code or otherwise, except for the Carve Out, unless otherwise ordered by the Court after notice and hearing.

9.     This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Adequate Protection Liens, which shall, by virtue of this Interim Order, constitute valid and automatically perfected security interests without the necessity of creating, filing, recording, or serving any mortgages, deeds of trust, assignments, financing statements, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens.

10.     As used in this Interim Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), together

with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court and (ii) until the issuance of a notice from either of the Prepetition Lenders that an Event of Default has occurred (the "Carve Out Notice") (which the Prepetition Lenders may only issue upon an Event of Default), the allowed, accrued, and unpaid reasonable fees and expenses of professionals employed by the Debtor and any Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals") in the amounts set forth in the Budget (which may only be paid upon consummation of the Sale) (the "Carve Out"); and (iii) following delivery of the Carve Out Notice, an aggregate amount (the "Residual Carve Out") (together with the Carve Out, "Case Professional Carve Out") not to exceed $300,000, provided that (a) any payment (which may only be paid upon consummation of the Sale) made to Case Professionals for services rendered prior to the delivery of the Carve Out Notice and in accordance with the Budget shall not reduce the Residual Carve Out. The Carve Out shall be senior in priority to the Prepetition Liens, the Adequate Protection Liens, and the Superpriority Claims. No payment of any Carve Out amount shall reduce any Prepetition Obligations.

11. The Cash Collateral and the Case Professionals Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against the Prepetition Lenders or seeking relief that would impair its rights and remedies under the Credit Agreement or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of the

Prepetition Lenders to recover on the Prepetition Obligations or seeking affirmative relief against it, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against the Prepetition Lenders or their collateral that would impair the ability of the Prepetition Lenders to recover on the Prepetition Obligations or seeking affirmative relief against them, or (iv) preventing, hindering or otherwise delaying the exercise by the Prepetition Lenders of any rights and/or remedies under this Interim Order, the Credit Agreement, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Prepetition Lenders upon any of the Collateral; (b) to make any distribution under a plan in this Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Prepetition Lenders, unless otherwise ordered by the Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consent of the Prepetition Lenders, (e) for using or seeking to use any insurance proceeds constituting Collateral without the prior consent of the Prepetition Lenders; (f) for incurring Indebtedness (as defined in the Credit Agreement) outside the ordinary course of business without the prior consent of the Prepetition Lenders; (i) for objecting to or challenging in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of the Prepetition Lenders; (j) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Lenders; (k) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or any other rights or interests of the

Prepetition Lenders; (l) for preventing, hindering or otherwise delaying the exercise by the Prepetition Lenders of any rights and remedies granted under this Interim Order; or (m) challenging or objecting to the Sale. Notwithstanding the foregoing, the Cash Collateral and the Case Professionals Carve Out may be used by any Statutory Committee to investigate the Prepetition Obligations, the Prepetition Liens and/or a potential Challenge (as that term is defined herein), provided that no more than $15,000 in the aggregate may be spent from the aforementioned sources on such investigations.

12. Nothing in this Interim Order shall prejudice the rights of a Statutory Committee and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court (other than the Debtor), to seek to object to or to challenge the Debtor's stipulations as set forth herein, including, but not limited to those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Prepetition Lenders; or (b) the validity, allowability, priority, full secured status or amount of the Prepetition Obligations. A party, including any Statutory Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Lenders in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations (each, a "Challenge") no later than the date set for objections to the Sale (the "Challenge Period"). Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), if a Challenge has not been properly commenced: (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever

waived, released and barred and (B) all of the Debtor's stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity, amount and secured status as to the Prepetition Lenders' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any Successor Case.

13.     All objections to the cash Collateral Motion to the extent not withdrawn or resolved, are hereby overruled on an interim basis.

14.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or any Successor Case, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.  The terms and provisions of this Interim Order and any protections granted to the Prepetition Lenders, shall continue in full force and effect notwithstanding the entry of such order until all the obligations of the Debtor to the Prepetition lender pursuant to the Credit Agreement have been indefeasibly paid in full and in cash and discharged (such payment being without prejudice to any terms or provisions contained in the Credit Agreement which survive such discharge by their terms).

15.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and

there shall be no stay of execution or effectiveness of this Interim Order. The rights of all parties in interest to object to the terms of the Final Order at the Final hearing are expressly reserved.

16.     The Debtor and the Prepetition Lenders are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as the Prepetition Lenders may require as evidence of and for the protection of the Prepetition Collateral, Cash Collateral, and the Postpetition Collateral, or that may be otherwise deemed necessary by the Prepetition Lenders to effectuate the terms and conditions of this Interim Order.

17.     The Debtor shall for the duration of the Specified Interim Period maintain the cash management system which is provided in the cash management order approved by the Court.

18.     The automatic stay of 11 U.S.C. § 362 is hereby vacated and modified only to the extent necessary to permit the Debtor and the Prepetition Lenders to commit all acts and take all actions necessary to implement this Interim Order, specifically, including allowing Veritas to take the $750,000 Collateral and apply it to its Prepetition Indebtedness.

19.     Based on the record at hearing, the Prepetition Lenders have acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.

20.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

21.     The Final Hearing to consider entry of the Final Order is scheduled for _____, 2017, at _____ at _____ prevailing Central time, at the United States Bankruptcy Court for the Middle District of Tennessee. If no objections to the relief sought in the Final

Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

22.     On or before December 8, 2016, the Debtor shall serve, by United States mail, first class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the Cash Collateral Motion, on:  (a) Gateway Packaging Company, LLC, c/o McDonald Hopkins, Attention David Agay (b) the Office of the United States Trustee for the Middle District of Tennessee; (c) the Internal Revenue Service; (d) the Tennessee Department of Revenue; (e) the Pension Benefit Guaranty Corporation; (f) all secured creditors; (g) the twenty-five largest unsecured creditors; (h) all known utility providers; (i) the U.S. Environmental Protection Agency; (j) the Tennessee Department of Environment and Conservation; (k) the Metropolitan Government of Nashville (l) the City of White House, Tennessee; (m) Robertson County, Tennessee; (n) Sumner County, Tennessee; (o) lessors of real and personal property; and (p) known counterparties to contracts that may be assumed and (q) all other parties that filed a notice of appearance and demand for service of papers in the Debtor's bankruptcy case under Bankruptcy Rule 9010(b).  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the bankruptcy Court no later than December 23, 2016, through the Court's ECF system such that all parties who have entered an appearance in the case will receive notice of such objection. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final order containing provisions that are inconsistent, with, or contrary to any of the terms in this Interim Order, subject to the protections under Section 364(e) and the rights of the Prepetition Lenders to terminate the Restructuring Support Agreement if such Final Order is not acceptable

to them.  In the event this Court modifies any of the provisions of this Interim Order following such further hearing, such modifications shall not affect the rights and priorities of Prepetition Lenders pursuant to this Interim Order with respect to the Prepetition Collateral, and any portion of the obligations under this Interim Order which arises or is incurred prior to such modifications (or otherwise arising prior to such modifications) shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

<div style="border:1px solid black; text-align:center;">

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY**
**AS INDICATED AT THE TOP OF THE FIRST PAGE.**

</div>

Approved for Entry:

_____
BASS, BERRY & SIMS PLC
Paul G. Jennings
Gene L. Humphreys
150 Third Avenue South, Suite 2800
Nashville, TN  37201
Tel:  (615) 742-6200
Fax:  (615) 742-6293
pjennings@bassberry.com
ghumphreys@bassberry.com

*Proposed Counsel for Debtor*

# EXHIBIT 1

Werthan Packaging
Cash Activity

| | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate |
|---|---|---|---|---|---|---|
| | | | | Week Ending | | |
| | 12/2/16 | 12/9/16 | 12/16/16 | 12/23/16 | 12/30/16 | 1/6/17 |
| Beginning Cash | 33,878 | 80,934 | 48,589 | 70,210 | 115,714 | 200,214 |
| Funding | 290,000 | 319,654 | 341,621 | 309,504 | 287,500 | 297,500 |
| **NET SALES** | 350,000 | 350,000 | 350,000 | 300,000 | 300,000 | 350,000 |
| COGS Total Material | 86,543 | 200,000 | 125,000 | 100,000 | 50,000 | 50,000 |
| Other PO Distributions (not COGS) | - | 10,000 | 10,000 | 8,000 | - | |
| Net Cash Contribution | 263,457 | 140,000 | 215,000 | 192,000 | 250,000 | 300,000 |
| **NON PO EXPENSES** | | | | | | |
| Hourly Payroll | 45,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Salaried Payroll | 80,000 | | 80,000 | | 80,000 | |
| Temp Payroll | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| KMH - Forklift payment and other rental payments | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Veritas Interest payment (reduces availability 17k month) | | 20,000 | | | | 20,000 |
| Newtek Lease Payment | | | | | | |
| Nashville & WH Lease Payments-Due on the 1st | | 12,000 | | | | 52,285 |
| Medical Insurance | | | | 55,000 | | |
| Worker's Comp/Property Insurance-Due on the 1st | | | | 16,000 | | |
| Utilities | | 30,000 | 25,000 | 5,000 | | - |
| Repairs | | | | | | |
| Freight | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Supplemental Pension-Due on the 1st | | | | | | |
| Misc. | | 15,000 | 15,000 | 15,000 | 8,000 | 25,000 |
| Professional fees | 31,400 | | | | | 200,000 |
| Total Non PO Disbursements | 156,400 | 142,000 | 185,000 | 156,000 | 153,000 | 362,285 |
| **Total Disbursements** | 242,943 | 352,000 | 320,000 | 264,000 | 203,000 | 412,285 |
| Shipping Over (Under) Disbursements | 107,057 | (2,000) | 30,000 | 36,000 | 97,000 | (62,285) |
| **Ending Cash** | 80,934 | 48,589 | 70,210 | 115,714 | 200,214 | 85,429 |
| **Accounts Receivable Rollforward** | | | | | | |
| Eligible AR beg | 929,048 | 930,210 | 852,733 | 989,376 | 939,376 | 889,376 |
| Sales est. | 350,000 | 350,000 | 350,000 | 300,000 | 300,000 | 350,000 |
| Collections est. | (348,838) | (427,476) | (213,357) | (350,000) | (350,000) | (350,000) |
| Eligible AR end | 930,210 | 852,733 | 989,376 | 939,376 | 889,376 | 889,376 |
| Concentration/Credit/Ineligible | (43,000) | (43,000) | (43,000) | (43,000) | (43,000) | (43,000) |
| Borrowing Base | 887,210 | 809,733 | 946,376 | 896,376 | 846,376 | 846,376 |
| advance rate | 85% | 85% | 85% | 85% | 85% | 85% |
| **A/R Borrowing Base** | 754,128 | 688,273 | 804,420 | 761,920 | 719,420 | 719,420 |
| **Inventory Rollforward** | | | | | | |
| Finished Goods | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 |
| Raw Materials | | | | | | - |
| Supplies | | | | | | |
| Packaging | | | | | | |
| WIP | | | | | | - |
| Labor and OH Costs | | | | | | |
| Total Inventory | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 |
| Ineligible | | | | | | - |
| Eligible Inventory | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 | 1,768,697 |
| Advance Rate | 55% | 55% | 55% | 55% | 55% | 55% |
| **Inventory Borrowing Base Calculation** | 972,783 | 972,783 | 972,783 | 972,783 | 972,783 | 972,783 |
| **Limit Inventory Borrowing Base per Veritas** | 972,783 | 972,783 | 972,783 | 972,783 | 972,783 | 972,783 |
| **AR Limit (inventory base limted to 1.5 times AR base)** | 1,663,518 | 1,518,250 | 1,774,455 | 1,680,705 | 1,586,955 | 1,586,955 |
| **Total Borrowing base** | 1,726,912 | 1,661,057 | 1,777,203 | 1,734,703 | 1,692,203 | 1,692,203 |
| Beginning Loan Balance | 1,776,096 | 1,756,912 | 1,681,057 | 1,787,203 | 1,734,703 | 1,692,203 |
| Collections | (348,838) | (427,476) | (213,357) | (350,000) | (350,000) | (350,000) |
| Adjustments | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Ending Loan Balance | 1,437,257 | 1,339,435 | 1,477,699 | 1,447,203 | 1,394,703 | 1,352,203 |
| Availability | 289,654 | 321,621 | 299,504 | 287,500 | 297,500 | 340,000 |
| Additional Funding | 30,000 | 20,000 | 10,000 | | | |
| Estimated Borrowing Base | | 319,654 | 341,621 | 309,504 | 302,304 | |

# <u>EXHIBIT B</u>
## Proposed Final Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

In re:                                    )
                                          )    Case No. 3:16-bk-08624
WERTHAN PACKAGING, INC.                   )
                                          )    Chapter 11
        Debtor.                           )
                                          )    Judge Harrison
                                          )
                                          )

**FINAL ORDER (1) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION
FINANCING PURSUANT TO BANKRUPTCY CODE SECTION 364, (2) GRANTING
SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (3)
AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDING
ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY**

Upon the Motion (the "Motion")[1] of the Debtor seeking entry of an order to Authorize

the Use of Cash Collateral and Grant Adequate Protection, it appearing that venue of this

Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and upon consideration of the  Murphey Declaration; and it appearing that this Court has

jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that notice of

the Motion has been given as set forth in the Motion and that such notice is adequate and no

other or further notice need be given; and a hearing having been held to consider the relief

requested in the Motion; and upon the record of the hearing and all of the proceedings had before

the Court; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest; and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

herein; and it appearing that there is a critical need for the use of cash collateral of the Prepetition

Lenders; and after due deliberation and consideration, and the good and sufficient cause

appearing therefor, the Court makes the following findings of Fact and Conclusions of law:

     A.    *Petition Date*:  On the Petition Date, the Debtor filed a voluntary petition under

Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle

District of Tennessee (the "Court") commencing this Chapter 11 Case.

     B.    *Debtor in Possession*:  The Debtor is continuing in the management and operation

of it business and properties as debtor in possession pursuant to sections 1107 and 1008 of the

Bankruptcy code.  No trustee or examiner has been appointed in this Chapter 11 Case.

     C.    *Jurisdiction and Venue*:  This court has jurisdiction, pursuant to 28 U.S.C. §§

157(b) and 1334, over this Chapter 11 Case, and over the persons and property affected hereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

for the cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

     D.    *No Trustee, Statutory Committee*.  As of the date hereof, the United States Trustee

for the Middle District of Tennessee has not yet appointed an official committee of unsecured

creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "Statutory

Committee").  No trustee or examiner has been appointed in this Chapter 11 Case.

     E.    *Debtor's Stipulations*.  After consultation with its counsel, and without prejudice

to the rights of parties in interest as set forth in paragraph 11 herein, the Debtor admits,

stipulates, acknowledges, and agrees that (collectively, paragraph E(i) through E(iv) below are

referred to herein as the "Debtor's Stipulations"):

          (i)    *Prepetition Secured Facilities*.  On or about October 14, 2015: (a) the

Debtor and Veritas entered into the Veritas Credit Agreement; (b) the Debtor and Newtek

entered into the Newtek Credit Agreement; and (c) Veritas and Newtek entered into an Intercreditor Agreement whereby Veritas subordinated its lien on the Newtek Collateral to Newtek and Newtek subordinated any interest it may have in any assets of the Debtor other than the Newtek Collateral to Veritas (the "Intercreditor Agreement").

   (ii) *Prepetition Liens and Collateral*.  The Credit Agreement is secured by the Prepetition Collateral, including without limitation accounts receivable.

   (iii) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations*.  The Debtor acknowledges and agrees that:  (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral; (c) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens exist, and no portion of the Prepetition Liens is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Debtor and its estate has no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Credit Agreement.

   (iv) *Cash Collateral*.  The Debtor represents that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or

{6465306:3}   3

Case 3:16-bk-08624  Doc 3  Filed 12/05/16  Entered 12/05/16 00:26:18  Desc Main
Document   Page 36 of 47

proceeds of other prepetition collateral, constitutes the Cash Collateral of the Prepetition

Lenders.

F. _Adequate Protection_: The Prepetition Lenders are entitled to receive adequate

protection to the extent of any diminution in the value of their respective interests in the

Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral,

the subordination of the Prepetition Liens to the Carve-out, as described herein, and the

imposition of the automatic stay (collectively the "Diminution in Value") pursuant to sections

361, 362 and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, and 507(b), as

adequate protection against any Diminution in Value, the Prepetition Lenders will receive: (a)

the Adequate Protection Liens, and (b) the Adequate Protection Superpriority Claims (as each as

defined herein).

G. _Sections 506(c) and 552(b)_. Upon entry of this Final Order, in light of the

Prepetition Lenders' agreement to subordinate their Adequate Protection Liens and Adequate

Protection Superpriority Claims to the Carve-out and to permit the use of their Cash Collateral

for payments made in accordance with the terms of this Final Order, the Prepetition Lenders are

entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the

Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H. _Necessity of Relief Requested_. The Debtor requires postpetition financing and the

use of Cash Collateral to continue to operate it business in the ordinary course. Without

authorization for postpetition financing and the continued use of cash Collateral, the Debtor

would not be able to consummate the Sale and maximize the value of its assets, and serious and

irreparable harm would result to the Debtor, its estate, and estate, and its creditors. The relief

requested in the Motion is therefore necessary, essential, and appropriate to prevent immediate

and irreparable harm to the Debtor's estate and to allow the maximization of the Debtor's assets, including the Prepetition Collateral, and, accordingly, good cause has been shown for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2).

I.      _Good Faith_.  The Prepetition Lenders and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund the Debtor's operations during the Specified Period (as defined herein).  Entry of this Final Order is in the best interests of the Debtor and its estate

J.  _Consent to Debtor's Use of Cash Collateral_.  The Debtor has requested that the Prepetition Lenders consent to the Debtor's use of Cash Collateral, and the Prepetition Lenders have consented to the Debtor's use of Cash Collateral, subject to the terms and conditions of this Final Order.

K.      _Continuation of Veritas Revolver Credit Post-Petition_.  Veritas has agreed to continue to provide credit to the Debtor pursuant to Section 364 on the same terms as provided for in the Veritas Credit Agreement, as amended by the Third Amendment to Loan and Security Agreement dated as of December 1, 2016, and on the terms set forth in this Interim Order.

L.      _Final Approval of Motion_.  It appears that there is good cause for the Court to authorize the Debtor's immediate use of Cash Collateral, subject to the terms and conditions stated herein. Accordingly, based on the foregoing findings and conclusions, the evidence and arguments presented to the Court at the Final Hearing, and the entire record before the Court in this Chapter 11 case.

BASED upon the Motion and the foregoing stipulations and findings, the COURT hereby ORDERS as follows:

1.      The Motion is granted to the extent provided herein.

2.     All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.     The Debtor is hereby authorized to borrow money, incur indebtedness and perform its obligations hereunder and under the Veritas Credit Agreement.  Except as provided herein, the Veritas Credit Agreement shall constitute a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.

4.     Subject to the terms and conditions of this Final Order, the Debtor shall be entitled to use Cash Collateral from and after the Petition Date through the date that is one hundred forty (140) days after the Petition Date (the "Specified Period") in accordance with the budget approved by the Prepetition Lenders and attached hereto as Exhibit 1 (the "Budget").

5.     As adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral for any diminution in value caused by the use of Cash Collateral, the subordination of the Prepetition Liens and the Adequate Protection Liens (as defined herein) to the Carve-Out (as defined herein) or the imposition of the automatic stay, the Prepetition Lenders are hereby granted valid, continuing, and automatically perfected first priority security interests and replacement liens (the "Adequate Protection Liens") in and upon all of the Debtor's properties and assets, real or personal, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof, and all accessions thereto, substitutions and replacements therefore, and wherever located, and all assets acquired by the Debtor's estate on or after the Petition Date (collectively, the "Postpetition Collateral", and together with the Prepetition Collateral, the "Collateral").  The Prepetition Lenders' respective interests in the Collateral (whether Prepetition Collateral or Postpetition Collateral) continues to be subject to the Intercreditor Agreement.  The

Adequate Protection Liens shall include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof but shall not include other causes of action under chapter 5 of the Bankruptcy Code and shall be subject only to (a) the Carve Out; (b) existing valid, enforceable, non-avoidable liens that were, as a matter of law, senior to the liens of the Prepetition Lenders as of the Petition Date; and (c) the quarterly fees payable to the United States Trustee and Clerk of the Court pursuant to 28 U.S.C. § 1930 and shall otherwise be senior to all other liens, claims, or interests in or to the Collateral.

6.     The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Case"); provided that except as expressly set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Chapter 11 Case or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed or elected in this Chapter 11 Case or any Successor Case, or upon the dismissal of this Chapter 11 Case or any Successor Case; and provided further that the Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code, nor shall any lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code be made *pari passu* with or senior to the Adequate Protection Liens.

7.     As additional adequate protection, the Prepetition Lenders are hereby granted as and to the extent provided in section 503(b) and 507(b) of the Bankruptcy Code an allowed

superpriority administrative expense claim in this Chapter 11 and any successor case (collectively, the "Superpriority Claims"), which shall be junior only to the Carve Out. Except for the Carve Out, the Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

8.      The security interests and liens granted to the Prepetition Lenders pursuant this Final Order shall not be subordinated to or made *pari passu* with any other lien, security interest or administrative claim under Section 364 of the Bankruptcy Code or otherwise, except for the Carve Out, unless otherwise ordered by the Court after notice and hearing.

9.      This Final Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Adequate Protection Liens, which shall, by virtue of this Final Order, constitute valid and automatically perfected security interests without the necessity of creating, filing, recording, or serving any mortgages, deeds of trust, assignments, financing statements, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens.

10.      As used in this Agreed Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court and (ii) until the issuance of a notice from either of the Prepetition Lenders

that an Event of Default has occurred (the "Carve Out Notice") (which the Prepetition Lenders may only issue upon an Event of Default), the allowed, accrued, and unpaid reasonable fees and expenses of professionals employed by the Debtor and any Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals") in the amounts set forth in the Budget (which may only be paid upon consummation of the Sale) (the "Carve Out"); and (iii) following delivery of the Carve Out Notice, an aggregate amount (the "Residual Carve Out") (together with the Carve Out, "Case Professional Carve Out") not to exceed $300,000, provided that (a) any payment (which may only be paid upon consummation of the Sale) made to Case Professionals for services rendered prior to the delivery of the Carve Out Notice and in accordance with the Budget, shall not reduce the Residual Carve Out. The Carve Out shall be senior in priority to the Prepetition Liens, the Adequate Protection Liens, and the Superpriority Claims. No payment of any Carve Out amount shall reduce any Prepetition Obligations.

11.    The Cash Collateral and the Case Professionals Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against the Prepetition Lenders or seeking relief that would impair its rights and remedies under the Credit Agreement or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of the Prepetition Lenders to recover on the Prepetition Obligations or seeking affirmative relief against it, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition

Obligations, (iii) for monetary, injunctive or other affirmative relief against the Prepetitions

Lenders or their collateral that would impair the ability of the Prepetition Lenders to recover on

the Prepetition Obligations or seeking affirmative relief against them, or (iv) preventing,

hindering or otherwise delaying the exercise by the Prepetition Lenders of any rights and/or

remedies under this Final Order, the Credit Agreement, or applicable law, or the enforcement or

realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the

Prepetition Lenders upon any of the Collateral; (b) to make any distribution under a plan in this

Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding,

before any court, arbitrator or other governmental body without the prior written consent of the

Prepetition Lenders, unless otherwise ordered by the Court; (d) to pay any fees or similar

amounts to any person who has proposed or may propose to purchase interests in the Debtor

without the prior written consent of the Prepetition Lenders, (e) for using or seeking to use any

insurance proceeds constituting Collateral without the prior consent of the Prepetition Lenders;

(f) for incurring Indebtedness (as defined in the Credit Agreement) outside the ordinary course of

business without the prior consent of the Prepetition Lenders; (i) for objecting to or challenging

in any way the claims, liens, or interests (including interests in the Collateral) held by or on

behalf of the Prepetition Lenders; (j)  for asserting, commencing or prosecuting any claims or

causes of action whatsoever, including, without limitation, any actions under chapter 5 of the

Bankruptcy Code, against the Prepetition Lenders; (k) for prosecuting an objection to, contesting

in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or

enforceability of any of the Prepetition Obligations or any other rights or interests of the

Prepetition Lenders; or (l) for preventing, hindering or otherwise delaying the exercise by the

Prepetition Lenders of any rights and remedies granted under this Final Order.  Notwithstanding

the foregoing, the Cash Collateral and the Case Professionals Carve Out may be used by any

Statutory Committee to investigate the Prepetition Obligations, the Prepetition Liens and/or a

potential Challenge (as that term is defined herein), provided that no more than $15,000 in the

aggregate may be spent from the aforementioned sources on such investigations.

12.     Nothing in this Final Order shall prejudice the rights of a Statutory Committee

and, solely if no Statutory Committee is appointed, any other party in interest granted standing

by the Court (other than the Debtor), to seek to object to or to challenge the Debtor's stipulations

as set forth herein, including, but not limited to those in relation to:  (a) the validity, extent,

priority, or perfection of the mortgage, security interests, and liens of the Prepetition Lenders; or

(b) the validity, allowability, priority, full secured status or amount of the Prepetition

Obligations.  A party, including any Statutory Committee, if appointed, must commence, as

appropriate, a contested matter or adversary proceeding raising such objection or challenge,

including, without limitation, any claim against the Prepetition Lenders in the nature of a setoff,

counterclaim or defense to the applicable Prepetition Obligations (each, a "Challenge") no later

than the date set for objections to the Sale (the "Challenge Period").  Upon the expiration of the

Challenge Period (the "Challenge Period Termination Date"), if a Challenge has not been

properly commenced:  (A) any and all such Challenges by any party (including, without

limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate

representative appointed in this Chapter 11 Case, and any chapter 7 trustee and/or examiner or

other estate representative appointed in any Successor Case), shall be deemed to be forever

waived, released and barred and (B) all of the Debtor's stipulations, waivers, releases,

affirmations and other stipulations as to the priority, extent, validity, amount and secured status

as to the Prepetition Lenders' claims, liens, and interests shall be of full force and effect and

forever binding upon the Debtor, the Debtor's bankruptcy estate, and all creditors, interest

holders, and other parties in interest in this Chapter 11 Case and any Successor Case.

13.     All objections to the cash Collateral Motion to the extent not withdrawn or

resolved, are hereby overruled.

14.     The provisions of this Final Order and any actions taken pursuant hereto shall

survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Case,

(ii) converting the Chapter 11Case to a case under Chapter 7 of the Bankruptcy Code or any

Successor Case, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case,

(iv) withdrawing of the reference of the Chapter 11 Case from this Court, or (v) providing for

abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.  The

terms and provisions of this Final Order and any protections granted to the Prepetition Lenders,

shall continue in full force and effect notwithstanding the entry of such order until all the

obligations of the Debtor to the Prepetition lender pursuant to the Credit Agreement have been

indefeasibly paid in full and in cash and discharged (such payment being without prejudice to

any terms or provisions contained in the Credit Agreement which survive such discharge by their

terms).

15.     This Final Order shall constitute findings of fact and conclusions of law pursuant

to the Bankruptcy Rule 7052.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d),

7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure,

this Final Order shall be immediately effective and enforceable upon its entry and there shall be

no stay of execution or effectiveness of this Final Order.

16.     The Debtor and the Prepetition Lenders are hereby authorized and directed to

perform all acts, take any action, and execute and comply with the terms of such other

documents, instruments, and agreements, as the Prepetition Lenders may require as evidence of and for the protection of the Prepetition Collateral, Cash Collateral, and the Postpetition Collateral, or that may be otherwise deemed necessary by the Prepetition Lenders to effectuate the terms and conditions of this Final Order.

17.     The Debtor shall for the duration of the Specified Period maintain the cash management system which is provided in the cash management order approved by the Court.

18.     The automatic stay of 11 U.S.C. § 362 is hereby vacated and modified only to the extent necessary to permit the Debtor and the Prepetition Lenders to commit all acts and take all actions necessary to implement this Final Order, specifically, including allowing Veritas to take the $750,000 Collateral and apply it to its Prepetition Indebtedness.

19.     Based on the record at hearing, the Prepetition Lenders have acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith.

20.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY**
**AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

Approved for Entry:

_____

BASS, BERRY & SIMS PLC
Paul G. Jennings
Gene L. Humphreys
150 Third Avenue South, Suite 2800
Nashville, TN  37201
Tel:  (615) 742-6200
Fax:  (615) 742-6293
pjennings@bassberry.com
ghumphreys@bassberry.com

*Proposed Counsel for Debtor*

20825294.5