Marian F. Harrison
US Bankruptcy Judge

Dated: 12/6/2016



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:16-bk-08624 |
| WERTHAN PACKAGING, INC. ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Judge Harrison |
| ) | |

**INTERIM ORDER**
**(1) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING**
**PURSUANT TO BANKRUPTCY CODE SECTION 364, (2) GRANTING SENIOR**
**LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (3)**
**AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDING**
**ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY, (5)**
**SETTING EXPEDITED INTERIM HEARING, AND (6) PRESCRIBING FORM**
**AND MANNER OF NOTICE AND TIME FOR FINAL HEARING**

Upon the Motion (DN 3, the "<u>Motion</u>")[1] of the Debtor seeking entry of an interim order to authorize the Debtor to obtain postpetition financing, granting senior liens and superpriority administrative expense status, authorizing the use of cash collateral and providing adequate protection, modifying the automatic stay, setting an expedited interim hearing, and prescribing form and manner of notice for final hearing, and it appearing that venue of this Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon consideration of the Murphey Declaration; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that there is a critical need for the use of cash collateral of the Prepetition Lenders; and after due deliberation and consideration, and the good and sufficient cause appearing therefor, the Court makes the following findings of Fact and Conclusions of law:

A. *Petition Date*: On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court") commencing this Chapter 11 Case.

B. *Debtor in Possession*: The Debtor is continuing in the management and operation of it business and properties as debtor in possession pursuant to sections 1107 and 1008 of the Bankruptcy code. No trustee or examiner has been appointed in this Chapter 11 Case.

C. *Jurisdiction and Venue*: This court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this Chapter 11 Case, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. *No Trustee, Statutory Committee*. As of the date hereof, the United States Trustee for the Middle District of Tennessee has not yet appointed an official committee of unsecured

creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "<u>Statutory Committee</u>"). No trustee or examiner has been appointed in this Chapter 11 Case.

E. *Debtor's Stipulations*. After consultation with its counsel, and without prejudice to the rights of parties in interest as set forth in paragraph 11 herein, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, paragraph E(i) through E(iv) below are referred to herein as the "<u>Debtor's Stipulations</u>"):

(i) *Prepetition Secured Facilities*. On or about October 14, 2015: (a) the Debtor and Veritas entered into the Veritas Credit Agreement; (b) the Debtor and Newtek entered into the Newtek Credit Agreement; and (c) Veritas and Newtek entered into an Intercreditor Agreement whereby Veritas subordinated its lien on the Newtek Collateral to Newtek and Newtek subordinated any interest it may have in any assets of the Debtor other than the Newtek Collateral to Veritas (the "<u>Intercreditor Agreement</u>").

(ii) *Prepetition Liens and Collateral*. The obligations under the Veritas Credit Agreement and the Newtek Credit Agreement are secured by security interests in and liens upon the Prepetition Collateral (such security interests and liens, the "<u>Prepetition Liens</u>"), including without limitation accounts receivable.

(iii) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations*. The Debtor acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral; (c) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens exist, and no portion of the Prepetition Liens is subject to any challenge or defense including, without

3

limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Debtor and its estate has no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Credit Agreement.

(iv) *Cash Collateral*. The Debtor represents that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other prepetition collateral, constitutes the Cash Collateral of the Prepetition Lenders.

F. *Adequate Protection*: The Prepetition Lenders are entitled to receive adequate protection to the extent of any diminution in the value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the subordination of the Prepetition Liens to the Carve-out, as described herein, and the imposition of the automatic stay (collectively the "Diminution in Value") pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, and 507(b), as adequate protection against any Diminution in Value, the Prepetition Lenders will receive: (a) the Adequate Protection Liens, and (b) the Adequate Protection Superpriority Claims (as each as defined herein).

G. *Sections 506(c) and 552(b)*. Upon entry of this Interim Order, in light of the Prepetition Lenders' agreement to subordinate their Adequate Protection Liens and Adequate Protection Superpriority Claims to the Carve-out and to permit the use of their Cash Collateral

4

for payments made in accordance with the terms of this Interim Order, the Prepetition Lenders are entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H. *Necessity of Relief Requested*. The Debtor requires postpetition financing and the use of Cash Collateral to continue to operate it business in the ordinary course. Without authorization for the postpetition financing and the continued use of cash Collateral, the Debtor would not be able to consummate the Sale and maximize the value of its assets, and serious and irreparable harm would result to the Debtor, its estate, and estate, and its creditors. The relief requested in the Motion is therefore necessary, essential, and appropriate to prevent immediate and irreparable harm to the Debtor's estate and to allow the maximization of the Debtor's assets, including the Prepetition Collateral, and, accordingly, good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).

I. *Good Faith*. The Prepetition Lenders and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund the Debtor's operations during the Specified Interim Period (as defined herein). Entry of this Interim Order is in the best interests of the Debtor and its estate.

J. *Consent to Debtor's Use of Cash Collateral*. The Debtor has requested that the Prepetition Lenders consent to the Debtor's use of Cash Collateral, and the Prepetition Lenders have consented to the Debtor's use of Cash Collateral, subject to the terms and conditions of this Interim Order.

K. *Continuation of Veritas Revolver Credit Post-Petition*. Veritas has agreed to continue to provide credit to the Debtor pursuant to Section 364 on the same terms as provided

5

for in the Veritas Credit Agreement, as amended by the Third Amendment to Loan and Security Agreement dated as of December 1, 2016 and on the terms set forth in this Interim Order.

BASED upon the Motion and the foregoing stipulations and findings, the COURT hereby ORDERS as follows:

1. The Motion is granted to the extent provided herein.

2. All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3. The Debtor is hereby authorized to borrow money, incur indebtedness and perform its obligations hereunder and under the Veritas Credit Agreement (as amended from time to time, including as of December 1, 2016). Except as provided herein, the Veritas Credit Agreement shall constitute a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.

4. Subject to the terms and conditions of this Interim Order, the Debtor shall be entitled to use Cash Collateral from and after the Petition Date through the date that is forty-five (45) days after the Petition Date (the "Specified Interim Period") in accordance with the budget approved by the Prepetition Lenders and attached hereto as Exhibit 1 (the "Budget").

5. As adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral for any diminution in value caused by the use of Cash Collateral, the subordination of the Prepetition Liens and the Adequate Protection Liens (as defined herein) to the Carve-Out (as defined herein) or the imposition of the automatic stay, the Prepetition Lenders are hereby granted valid, continuing, and automatically perfected first priority security interests and replacement liens (the "Adequate Protection Liens") in and upon all of the Debtor's properties and assets, real or personal, whether acquired before or after the Petition Date,

whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof, and all accessions thereto, substitutions and replacements therefore, and wherever located, and all assets acquired by the Debtor's estate on or after the Petition Date (collectively, the "<u>Postpetition Collateral</u>", and together with the Prepetition Collateral, the "<u>Collateral</u>"). The Prepetition Lenders' respective interests in the Collateral (whether Prepetition Collateral or Postpetition Collateral) continue to be subject to the Intercreditor Agreement. The Adequate Protection Liens shall not include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof and shall not include other causes of action under chapter 5 of the Bankruptcy Code and shall be subject only to (a) the Carve Out; (b) existing valid, enforceable, non-avoidable liens that were, as a matter of law, senior to the liens of the Prepetition Lenders as of the Petition Date; and (c) the quarterly fees payable to the United States Trustee and Clerk of the Court pursuant to 28 U.S.C. § 1930 and shall otherwise be senior to all other liens, claims, or interests in or to the Collateral. For the avoidance of doubt, Veritas is hereby granted perfected security interests in and liens on the Collateral under Section 364(c) and (d) of the Bankruptcy Code to secure any and all postpetition obligations owed by the Debtor to Veritas, which security interests and liens will have the same priority and be subject to the same protections as the Prepetition Liens and the Adequate Protection Liens which are held by Veritas, or which would be held by Veritas if such postpetition obligations were deemed to be prepetition obligations.

6. The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "<u>Successor Case</u>"); provided that

7

except as expressly set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Chapter 11 Case or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed or elected in this Chapter 11 Case or any Successor Case, or upon the dismissal of this Chapter 11 Case or any Successor Case; and provided further that the Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code, nor shall any lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code be made *pari passu* with or senior to the Adequate Protection Liens.

7. As additional adequate protection, the Prepetition Lenders are hereby granted as and to the extent provided in section 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in this Chapter 11 and any successor case (collectively, the "Superpriority Claims"), which shall be junior only to the Carve Out. Except for the Carve Out, the Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

8. The security interests and liens granted to the Prepetition Lenders pursuant this Interim Order shall not be subordinated to or made *pari passu* with any other lien, security interest or administrative claim under Section 364 of the Bankruptcy Code or otherwise, except for the Carve Out, unless otherwise ordered by the Court after notice and hearing.

9. To the extent Veritas receives, after the Petition Date, payments of collected accounts receivable that exceed the postpetition amounts loaned under the Veritas Credit Agreement, such excess payments shall be treated as additional adequate protection payments pending further orders of the Court.

10. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Adequate Protection Liens, which shall, by virtue of this Interim Order, constitute valid and automatically perfected security interests without the necessity of creating, filing, recording, or serving any mortgages, deeds of trust, assignments, financing statements, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens.

11. As used in this Interim Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court and (ii) until the issuance of a notice from either of the Prepetition Lenders that an Event of Default has occurred (the "Carve Out Notice") (which the Prepetition Lenders may only issue upon an Event of Default), the allowed, accrued, and unpaid reasonable fees and expenses of professionals employed by the Debtor and any Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals") in the amounts set forth in the Budget (which may only be paid upon consummation of the Sale) (the "Carve Out"); and (iii) following delivery of the Carve Out Notice, an aggregate amount (the "Residual Carve Out") (together with the Carve Out, "Case Professional Carve Out") not to exceed $300,000, provided that (a) any payment (which may only be paid upon consummation of the Sale) made to Case

9

Case 3:16-bk-08624 Doc 27 Filed 12/06/16 Entered 12/06/16 16:59:17 Desc Main
Document Page 9 of 18

Professionals for services rendered prior to the delivery of the Carve Out Notice and in accordance with the Budget shall not reduce the Residual Carve Out. The Carve Out shall be senior in priority to the Prepetition Liens, the Adequate Protection Liens, and the Superpriority Claims. No payment of any Carve Out amount shall reduce any Prepetition Obligations.

12. The Cash Collateral and the Case Professionals Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against the Prepetition Lenders or seeking relief that would impair its rights and remedies under the Credit Agreement or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of the Prepetition Lenders to recover on the Prepetition Obligations or seeking affirmative relief against it, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against the Prepetition Lenders or their collateral that would impair the ability of the Prepetition Lenders to recover on the Prepetition Obligations or seeking affirmative relief against them, or (iv) preventing, hindering or otherwise delaying the exercise by the Prepetition Lenders of any rights and/or remedies under this Interim Order, the Credit Agreement, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Prepetition Lenders upon any of the Collateral; (b) to make any distribution under a plan in this Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding,

before any court, arbitrator or other governmental body without the prior written consent of the Prepetition Lenders, unless otherwise ordered by the Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consent of the Prepetition Lenders, (e) for using or seeking to use any insurance proceeds constituting Collateral without the prior consent of the Prepetition Lenders; (f) for incurring Indebtedness (as defined in the Credit Agreement) outside the ordinary course of business without the prior consent of the Prepetition Lenders; (i) for objecting to or challenging in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of the Prepetition Lenders; (j) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Lenders; (k) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or any other rights or interests of the Prepetition Lenders; (l) for preventing, hindering or otherwise delaying the exercise by the Prepetition Lenders of any rights and remedies granted under this Interim Order; or (m) challenging or objecting to the Sale. Notwithstanding the foregoing, the Cash Collateral and the Case Professionals Carve Out may be used by any Statutory Committee to investigate the Prepetition Obligations, the Prepetition Liens and/or a potential Challenge (as that term is defined herein), provided that no more than $15,000 in the aggregate may be spent from the aforementioned sources on such investigations.

13. Nothing in this Interim Order shall prejudice the rights of a Statutory Committee and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court (other than the Debtor), to seek to object to or to challenge the Debtor's stipulations

11

as set forth herein, including, but not limited to those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Prepetition Lenders; or (b) the validity, allowability, priority, full secured status or amount of the Prepetition Obligations. A party, including any Statutory Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Lenders in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations (each, a "Challenge") on or before the later of: (i) January 20, 2017 or (ii) with respect to the Veritas liens, thirty (30) days after Veritas files its proof of claim in this Chapter 11 Case; and on or before the later of : (i) January 20, 2017 or (ii) with respect to the Newtek liens, thirty (30) days after Newtek files its proof of claim in this Chapter 11 Case (the "Challenge Period"). Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), if a Challenge has not been properly commenced: (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred and (B) all of the Debtor's stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity, amount and secured status as to the Prepetition Lenders' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any Successor Case.

14. All objections to the cash Collateral Motion to the extent not withdrawn or resolved, are hereby overruled on an interim basis.

15. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Case, (ii) converting the Chapter 11Case to a case under Chapter 7 of the Bankruptcy Code or any Successor Case, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court. The terms and provisions of this Interim Order and any protections granted to the Prepetition Lenders, shall continue in full force and effect notwithstanding the entry of such order until all the obligations of the Debtor to the Prepetition lender pursuant to the Credit Agreement have been indefeasibly paid in full and in cash and discharged (such payment being without prejudice to any terms or provisions contained in the Credit Agreement which survive such discharge by their terms).

16. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order. The rights of all parties in interest to object to the terms of the Final Order at the Final hearing are expressly reserved.

17. The Debtor and the Prepetition Lenders are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as the Prepetition Lenders may require as evidence of and for the protection of the Prepetition Collateral, Cash Collateral, and the Postpetition

13

Collateral, or that may be otherwise deemed necessary by the Prepetition Lenders to effectuate the terms and conditions of this Interim Order.

18. The Debtor shall for the duration of the Specified Interim Period maintain the cash management system which is provided in the cash management order approved by the Court.

19. The automatic stay of 11 U.S.C. § 362 is hereby vacated and modified only to the extent necessary to permit the Debtor and the Prepetition Lenders to commit all acts and take all actions necessary to implement this Interim Order.

20. Based on the record at hearing, the Prepetition Lenders have acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.

21. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

22. The Final Hearing to consider entry of the Final Order is scheduled for December 28, 2016, at 1:00 p.m., prevailing Central time, at the United States Bankruptcy Court for the Middle District of Tennessee, Courtroom 3, 701 Broadway, Nashville, TN. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

23. On or before December 8, 2016, the Debtor shall serve, by United States mail, first class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, the proposed Final Order and the Cash Collateral Motion, on: (a) Gateway Packaging Company, LLC, c/o McDonald Hopkins, Attention David Agay (b) the Office of the United States Trustee for the Middle

14

District of Tennessee; (c) the Internal Revenue Service; (d) the Tennessee Department of Revenue; (e) the Pension Benefit Guaranty Corporation; (f) all secured creditors; (g) the twenty-five largest unsecured creditors; (h) all known utility providers; (i) the U.S. Environmental Protection Agency; (j) the Tennessee Department of Environment and Conservation; (k) the Metropolitan Government of Nashville (l) the City of White House, Tennessee; (m) Robertson County, Tennessee; (n) Sumner County, Tennessee; (o) lessors of real and personal property; and (p) known counterparties to contracts that may be assumed and (q) all other parties that filed a notice of appearance and demand for service of papers in the Debtor's bankruptcy case under Bankruptcy Rule 9010(b). The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the bankruptcy Court no later than December 22, 2016, through the Court's ECF system such that all parties who have entered an appearance in the case will receive notice of such objection. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final order containing provisions that are inconsistent, with, or contrary to any of the terms in this Interim Order, subject to the protections under Section 364(e) and the rights of the Prepetition Lenders to terminate the Restructuring Support Agreement if such Final Order is not acceptable to them. In the event this Court modifies any of the provisions of this Interim Order following such further hearing, such modifications shall not affect the rights and priorities of Prepetition Lenders pursuant to this Interim Order with respect to the Prepetition Collateral, and any portion of the obligations under this Interim Order which arises or is incurred prior to such modifications (or otherwise arising prior to such modifications) shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.**

Approved for Entry:

/s/ Paul G. Jennings
BASS, BERRY & SIMS PLC
Paul G. Jennings
Gene L. Humphreys
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6200
Fax: (615) 742-6293
pjennings@bassberry.com
ghumphreys@bassberry.com

*Proposed Counsel for Debtor*

20912423.4

# **EXHIBIT 1**

Werthan Packaging - DIP
Proposed DIP Budget

| *Week Ending* | 12/9/16 | 12/16/16 | 12/23/16 | 12/30/16 | 1/6/17 |
|---|---:|---:|---:|---:|---:|
| RECEIPTS (Advances under the DIP) | $ 99,156 | $ 317,826 | $ 309,504 | $ 287,500 | $ 297,500 |
| DISBURSEMENTS: | | | | | |
| Purchases of Materials - Product | 50,000 | 125,000 | 100,000 | 50,000 | 50,000 |
| Other Product Costs | 10,000 | 10,000 | 8,000 | - | |
| Hourly Payroll | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Salaried Payroll | | 80,000 | | 80,000 | |
| Temp Payroll | 10,000 | 5,000 | 5,000 | 5,000 | |
| KMH - Forklift payment and other rental payments | | 5,000 | 5,000 | 5,000 | 5,000 |
| Veritas Interest payment | | | | | - |
| Newtek Debt Payment | | | | | |
| Nashville & WH Lease Payments-Due on the 1st | | | | | 52,285 |
| Medical Insurance | | | 55,000 | | |
| Worker's Comp/Property Insurance-Due on the 1st | | | 16,000 | | |
| Utilities | 30,000 | 25,000 | 5,000 | | 20,000 |
| Repairs | | | | | |
| Freight | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Supplemental Pension-Due on the 1st | | | | | |
| Misc. | 15,000 | 15,000 | 15,000 | 8,000 | 25,000 |
| Professional fees | | | | | 200,000 |
| Total Disbursements | 170,000 | 320,000 | 264,000 | 203,000 | 407,285 |
| Change in Cash | (70,844) | (2,174) | 45,504 | 84,500 | (109,785) |
| Beginning Cash | 96,687 | 25,843 | 23,669 | 69,172 | 153,672 |
| **Ending Cash** | $ 25,843 | $ 23,669 | $ 69,172 | $ 153,672 | $ 43,887 |

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.